

Copy hand-delivered
to chambers

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

JON A. SANFILIPPO
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN FEB 19 A 9 40

UNITED STATES OF AMERICA,

Plaintiff,

v.

RONNIE B. WELLS,

Defendant.

Case No. 12-CR-217

## PLEA AGREEMENT

1. The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Mario F. Gonzales, Assistant United States Attorney, and the defendant, Ronnie B. Wells, individually and by attorney Joseph Bugni, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in two counts of a four-count superseding indictment, which alleges violations of Title 21, United States Code, Sections 841 (a)(1), (b)(1)(A), (b)(1)(C) and 846.

3. The defendant has read and fully understands the charge contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4.    The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

## COUNT THREE

### THE GRAND JURY FURTHER CHARGES:

On or about August 12, 2012, in the State and Eastern District of Wisconsin,

### RONALD B. MCDANIELS, and
### RONNIE B. WELLS

knowingly and intentionally distributed heroin a Schedule I controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and Title 18, United States Code, Section 2.

5.    The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:    See facts contained in Attachment A.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

6.    The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: count three, twenty years imprisonment and $1,000,000. The count also carries a mandatory special assessment of $100, at least three years of supervised release, and a maximum of life of supervised release.

7.      The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## ELEMENTS

8.      The parties understand and agree that in order to sustain the charge of Distribution of Heroin as set forth in count three, the government must prove each of the following propositions beyond a reasonable doubt:

First, that the defendants knowingly distributed a controlled substance; and

Second, that the defendant did so knowingly and intentionally.

## SENTENCING PROVISIONS

9.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10.     The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11.     The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 4. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

3

12.     The parties acknowledge and understand that prior to sentencing the United States
Probation Office will conduct its own investigation of the defendant's criminal history. The parties
further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties
may not have full and complete information regarding the defendant's criminal history. The parties
acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea
solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13.     The parties acknowledge, understand, and agree that the sentencing guidelines
calculations included in this agreement represent the positions of the parties on the appropriate
sentence range under the sentencing guidelines. The defendant acknowledges and understands that
the sentencing guidelines recommendations contained in this agreement do not create any right to
be sentenced within any particular sentence range, and that the court may impose a reasonable
sentence above or below the guideline range. The parties further understand and agree that if the
defendant has provided false, incomplete, or inaccurate information that affects the calculations,
the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14.     The parties acknowledge, understand, and agree that pursuant to Sentencing Guide-
lines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the
sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which
the defendant is pleading guilty. In addition, the parties agree to have the court consider the
behavior set forth in Attachment A, in return for the state of Wisconsin dismissing the charges in
*State v. Wells,* 2012WD002647 (Wood County).

4

15. The parties acknowledge and understand that the government will recommend to the sentencing court that the relevant conduct attributable to the defendant atleast 40 grams but not more than 60 grams of a mixture and substance containing heroin, a Schedule I controlled substance.

## Base Offense Level

16. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in count three is 20under United States Sentencing Guidelines Manual § 2D1.1 (c )(10).

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

18. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the

5

amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

## Court's Determinations at Sentencing

20. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

21. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

22. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

23. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The

6

defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision. The defendant acknowledges and agrees that, while he is on supervision, the Probation Department and FLU can exchange financial information pertaining to the defendant in order to facilitate collection of any fine or restitution ordered by the court as part of the sentence in this case.

## Fine

24. The parties agree to recommend to the sentencing court that a nominal fine consistent with the defendant's ability to pay be imposed against the defendant.

## Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Forfeiture

26. The defendant agrees that all properties listed in the indictment, information and/or bill of particulars constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense . The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

## DEFENDANT'S COOPERATION

27. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings,

7

if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of

the defendant's cooperation. The parties acknowledge, understand and agree that the defendant has

provided substantial assistance to the government in the investigation or prosecution of others, the

government, in its discretion, will recommend a downward departure from: (a) the applicable

sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The

defendant acknowledges and understands that the court will make its own determination regarding

the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that in so
doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights
which include the following:

      a.     If the defendant persisted in a plea of not guilty to the charges against him,
he would be entitled to a speedy and public trial by a court or jury. The
defendant has a right to a jury trial. However, in order that the trial be
conducted by the judge sitting without a jury, the defendant, the
government and the judge all must agree that the trial be conducted by the
judge without a jury.

      b.     If the trial is a jury trial, the jury would be composed of twelve citizens
selected at random. The defendant and his attorney would have a say in who
the jurors would be by removing prospective jurors for cause where actual
bias or other disqualification is shown, or without cause by exercising
peremptory challenges. The jury would have to agree unanimously before it
could return a verdict of guilty. The court would instruct the jury that the
defendant is presumed innocent until such time, if ever, as the government
establishes guilt by competent evidence to the satisfaction of the jury
beyond a reasonable doubt.

      c.     If the trial is held by the judge without a jury, the judge would find the facts
and determine, after hearing all of the evidence, whether or not he was
persuaded of defendant's guilt beyond a reasonable doubt.

      d.     At such trial, whether by a judge or a jury, the government would be
required to present witnesses and other evidence against the defendant. The
defendant would be able to confront witnesses upon whose testimony the
government is relying to obtain a conviction and he would have the right to

8

cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

9

## Further Civil or Administrative Action

32.     The defendant acknowledges, understands, and agrees that the defendant has

discussed with his attorney and understands that nothing contained in this agreement, including

any attachment, is meant to limit the rights and authority of the United States of America or any

other state or local government to take further civil, administrative, or regulatory action against the

defendant, including but not limited to any listing and debarment proceedings to restrict rights and

opportunities of the defendant to contract with or receive assistance, loans, and benefits from

United States government agencies.

## GENERAL MATTERS

33.     The parties acknowledge, understand, and agree that this agreement does not

require the government to take, or not to take, any particular position in any post-conviction

motion or appeal.

34.     The parties acknowledge, understand, and agree that this plea agreement will be

filed and become part of the public record in this case.

35.     The parties acknowledge, understand, and agree that the United States Attorney's

office is free to notify any local, state, or federal agency of the defendant's conviction.

36.     The defendant understands that pursuant to the Victim and Witness Protection Act,

the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United

States, the victim of a crime may make a statement describing the impact of the offense on the

victim and further may make a recommendation regarding the sentence to be imposed. The

defendant acknowledges and understands that comments and recommendations by a victim may

be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

10

37.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

38.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

11

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2/7/14

Defendant
RONNIE D. WELLS

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/7/14

Attorney for Defendant
JOSEPH BUGNI

For the United States of America:

Date: 2/11/14

JAMES L. SANTELLE
United States Attorney

Date: 2/11/14

MARIO F. GONZALES
Assistant United States Attorney

12

# Attachment A

Detective Todd Andrys of the Wisconsin Rapids Police Department stated that on September 2, 2011 he was working in an undercover capacity for the Central Wisconsin Drug Task Force, in the City of Wisconsin Rapids. On that date, he, along with Bryant Menger, who was working with law enforcement, went to a pre-arranged location, that being the Kwik Trip Store located at 3030 Plover Road, in the City of Wisconsin Rapids, Wood County, Wisconsin. At that location he observed as Menger made contact with an individual whom he recognized from a driver's license photograph which he reviewed with other officers prior to this meeting, as the defendant, Ronnie D. Wells, Jr. Mr. Wells handed Menger three tightly-knotted, clear plastic baggies each containing an off-white chunky material purported to be crack cocaine. Detective Andrys reports observing Menger giving Mr. Wells $150 in pre-recorded currency in exchange for the cocaine. Detective Andrys, a person experienced in the administration of the Scott Reagent field test, subjected the off-white chunky substance from the transaction that occurred on September 2, 2011 to said test and the results of said test were consistent with the presence of cocaine.

Detective Todd Andrys of the Wisconsin Rapids Police Department reports that on September 12, 2011 he met with Bryant Menger, who was working with law enforcement. Detective Andrys reports that he did check Mr. Menger's person and did not find any controlled substances on his person.Mr. Menger was shown a Wisconsin DOT photograph of Ronnie M.D. Wells,Jr., the defendant, whom Mr. Menger recognized from prior contacts. Detective Andrys reports that he provided Mr. Menger with $50 prerecorded U.S. currency and observed Mr. Menger as he met with Mr. Wells at the corner of Fourth Street South and Piltz Avenue in the City of Wisconsin Rapids, Wood County. Detective Andrys reports that he conducted surveillance of that location throughout the time that Mr. Menger was present there with the defendant Detective Andrys reports observing Mr. wells hand Menger a foil wrapper containing a brownish chunky material, purported to be heroin, in exchange for the $50 in prerecorded U.S. currency. Mr. Menger provided Detective Andrys with the foil wrapper containing the brownish chunky material. Detective Andrys again searched Mr. Menger and did not find any controlled substances on his person. Mr. Menger informed Detective Andrys that he had purchased this substance from Mr. Wells and that the defendant had given him this fall package when he gave the defendant $50. Detective Andrys reports that a sample of the brownish chunky material from the transaction that occurred on September 12, 2011 was sent to the Wisconsin State Crime Laboratory in Wausau, Wisconsin and that he subsequently viewed the results of said testing which revealed that the substance tested positive for the presence of heroin.

On August 6, 2012, law enforcement with the use of a confidential informant (CI) made contact with Ronald B. McDANIELS at telephone number 414-840-2854 to arrange a purchase of heroin. The CI indicated that her girlfriend would conduct the purchase of heroin. An undercover agent, Wisconsin Department of Justice Division of Criminal Investigations, Special Agent Christina McNichol, would play the role of the girlfriend during the controlled purchase. During recorded telephone calls and text messages the CI arranged to purchase five grams of heroin for $1,250.00. The deal was to take place in the parking lot of a Walgreens drug store in the

13

Case 2:12-cr-00217-CNC Filed 02/19/14 Page 13 of 14 Document 152

Milwaukee area. The deal was negotiated with McDANIELS on August 6, 2012, but a second individual Ronnie B. WELLS a known associate delivered the heroin instead of McDANIELS. The heroin was weighed and tested and test positive for the presence of heroin. The heroin weighed 3.7 grams. Law enforcement agents observed the deal while conducting surveillance of the scene. The deal was also recorded via audio and video.

On August 15, 2012, law enforcement with the use of a confidential informant (CI) again made contact with Ronald B. McDANIELS to arrange a purchase of heroin. The CI again indicated that her girlfriend would conduct the purchase of heroin. DCI Special Agent Christina McNichol, would play the role of the girlfriend during the controlled purchase. On August 16, 2012, SA Nichol exchanged a series of phone calls and text messages with Ronald B. McDANIELS to arrange for the purchase of 7 grams of heroin for $2,000. SA Nichol eventually agreed to conduct the deal in Milwaukee at a Walgreens drug store. Just prior to the delivery McDANIELS contact SA Nichols and indicated that he did not want to do the deal in the parking lot because there were surveillance cameras. SA Nichols then agreed to conduct the deal several blocks away from the Walgreens.

On August 16, 2012, SA Nichols purchased 7 grams of heroin from Ronald B. McDaniels and an associate, Ronnie B. Wells, in Milwaukee. SA Nichol was seated in her vehicle when she was approached by Wells and McDaniels. McDaniels approached her vehicle and opened the passenger side door at which time Wells placed the heroin on the front passenger seat. SA Nichol placed the $2,000 in United States currency on the seat and it was picked up by McDaniels to complete the transaction. On August 16, 2012, the heroin purchased from McDaniels and Wells was weighed and tested and tested positive for heroin. The heroin weight was 5.27 grams. On the same date as the delivery, the CI received a text message from McDaniels, indicating that he made a mistake and gave SA Nichol the wrong package and had 2 more grams of heroin for the CI.

14